UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITY OF OCEANSIDE,<br>Plaintiff,<br>v.<br>ZURICH LEGACY SOLUTIONS SERVICES (UK) LIMITED (f/k/a Eagle Star Insurance Company Ltd.); ZURICH INSURANCE GROUP LIMITED; RIVERSTONE INSURANCE (UK) LTD; RIVERSTONE CLAIMS MANAGEMENT LLC; ADMIRAL INSURANCE COMPANY,<br>Defendants. | Case No.: 26-cv-4472-RSH-DEB<br><br>**ORDER DISMISSING DEFENDANT RIVERSTONE CLAIMS MANAGEMENT LLC**<br><br>[ECF No. 14] |

Before the Court is Defendant RiverStone Claims Management LLC's ("RiverStone Claims") motion to dismiss. ECF No. 14. The motion has been fully briefed. ECF Nos. 20, 21. For the reasons stated below, the Court grants the motion and dismisses claims Six and Seven of the First Amended Complaint ("FAC") with leave to amend.

## I. BACKGROUND

The City of Oceanside brings suit against various Defendants to enforce alleged insurance obligations in relation to ongoing environmental claims. The suit arises out of two environmental claims by the City related to hazardous waste that was disposed of at

two City landfills and subsequently contaminated the environment. *See* ECF No. 10 (FAC) ¶¶ 20–36. One of the landfills was operated from 1971 to 1979, and another was operated from approximately the 1950s to 1971. *See id.* ¶¶ 20, 28. Oceanside has participated in efforts to monitor and eliminate contamination for decades. *See id.* ¶¶ 21–35.

The instant motion relates to a policy issued by a company named Eagle Star in 1969, with a term of May 1, 1969, to January 1, 1973 (the "Eagle Star Policy"). *Id.* ¶ 10. As alleged in the FAC, Eagle Star was acquired by Defendant Zurich Insurance Group Limited (formerly known as Zurich Financial Services Limited) in approximately 1998. *Id.* ¶ 11. Eagle Star continued to exist as Eagle Star Insurance Company until approximately 2016, when it changed its name to Zurich Legacy Solutions Services (UK) Limited. *Id.* ¶ 13.

In 2012, RiverStone Insurance (UK) Limited ("RiverStone UK") acquired the liabilities and obligations of insurance policies issued in California by Eagle Star. *Id.* ¶ 12. RiverStone UK was a subsidiary of Fairfax Financial Holding Limited ("Fairfax"). *Id.* In 2021, CVC Capital Partners acquired RiverStone UK from Fairfax.[1] *Id.* ¶ 14.

RiverStone Claims is a limited liability company organized under the laws of Delaware. *Id.* ¶ 5. RiverStone Claims is also allegedly a subsidiary of Fairfax. *Id.* ¶ 5. However, unlike RiverStone UK, RiverStone Claims was not sold in 2021. *Id.* ¶ 14. RiverStone Claims and RiverStone UK are thus separate entities with separate ownership structures and parent companies. *Id.* ¶¶ 5, 14–15.

Beginning in May 2025, the City tendered insurance claims to various entities, including RiverStone Claims. *Id.* ¶¶ 37, 40. The claims in this lawsuit that relate to RiverStone Claims are premised on the theory that RiverStone Claims made intentional and/or negligent misrepresentations in failing to inform the City that RiverStone UK was the proper claims administrator for claims falling under the Eagle Star Policy.

---

[1] The complaint notes that CVC acquired "Riverstone Europe," which included Riverstone UK, in 2021, and that Riverstone International Holdings, Limited is the current parent company of Riverstone UK. ECF No. 10 ¶ 14–15.

The City alleges that it followed up regularly with RiverStone Claims between May 2025 and February 2026. *Id.* ¶ 42. On July 3, 2025, Iris Villanueva, a claims analyst for RiverStone Claims, allegedly informed the City that RiverStone Claims was "'in the process of searching for policies,' that the search remained ongoing, and that additional information would be provided once the search was complete." *Id.* ¶ 82. On the same day, in response to an inquiry from the City's counsel, Ms. Villanueva represented that she could not confirm that RiverStone claims was the claims administrator for the Eagle Star Policy and that she did "not recognize Eagle Star." *Id.* ¶ 103(b). On August 19, 2025, Ms. Villanueva allegedly again informed the City that RiverStone Claims was "conducting additional policy searches with the information [the City] provided." *Id.* ¶ 83. On December 8, 2025, Ms. Villanueva allegedly informed the City that she was following up with the "policy search team" and that RiverStone Claims "needed to conduct 'a deeper dive on the policy documentation [the City] provided [RiverStone Claims] for Eagle Star and Mutual Fire.'"[2] *Id.* ¶ 84. On February 6, 2026, Ms. Villanueva stated that RiverStone Claims was "still investigating" the City's tender and was "actively investigating the supplemental information [the City] provided [Riverstone Claims] for Eagle Star[.]" *Id.* ¶ 103(f). On February 25, 2026, Ms. Villanueva allegedly advised the City that RiverStone Claims had "'made contact with RiverStone International,' that RiverStone International 'will be handling the claim under the Eagle Star policy,' and directed the [City] to a [RiverStone UK] claims adjuster, Paul Aponik." *Id.* ¶ 89.

Separately, on October 28, 2025, the City allegedly tendered insurance claims to RiverStone UK and Zurich Insurance Group.[3] *Id.* ¶ 43. In subsequent conversations with

---

[2] The Mutual Fire policy is a separate insurance policy that is not relevant to the claims against RiverStone Claims.

[3] The City attached most of the alleged communications with RiverStone Claims and RiverStone UK to the FAC, *see* ECF No. 10-1, including a copy of the October 28, 2025 letter tendering claims to RiverStone UK. In this letter, the City stated that "[w]e understand that RiverStone Insurance UK Limited is the successor in interest to Eagle Star

RiverStone UK, the City requested that RiverStone UK provide a quick coverage determination based on the City's prior discussions with RiverStone Claims. *Id.* ¶¶ 48–50. To date, the City alleges that RiverStone UK has not provided a coverage determination. *Id.* ¶¶ 49–50. However, the City does not allege that this refusal is based on the City's delay in submitting a claim, but rather that RiverStone UK has requested "additional information to evaluate coverage." *Id.*

The City brings two state law claims against Riverstone Claims: (1) intentional misrepresentation, concealment, and fraud (Claim Seven), and (2) negligent misrepresentation (Claim Six).

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) is read in conjunction with Rule 8(a)(2), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In deciding a motion to dismiss, the Court accepts all material factual allegations as true and draws all reasonable inferences in favor of the non-movant. *See Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). Conclusory allegations need not be accepted as true. *See Holden v. Hagopian*, 978 F.2d 1115, 1121 (9th Cir. 1992).

For claims alleging "fraud or mistake," a heightened pleading standard applies. Federal Rule of Civil Procedure 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud," including "an account of the 'time,

---

Insurance Company (Eagle Star) and administers all Eagle Star legacy claims." ECF No. 10-1, PageID.508–11.

place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.'" *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (quoting *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004)). "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)); *see also Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) ("Rule 9(b) demands that the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong.") (citation and internal quotation marks omitted)). A pleading must also identify "what is false or misleading about the purportedly fraudulent statement, and why it is false." *Moore v. Mars Petcare U.S., Inc.*, 966 F.3d 1007, 1019 (9th Cir. 2020) (quoting *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018)).

## III. ANALYSIS

### A. Intentional Misrepresentation, Concealment, and Fraud

Under California law, "[t]he elements of a fraud or intentional misrepresentation claim are: (1) misrepresentation, (2) knowledge of falsity, (3) intent to defraud or induce reliance, (4) justifiable reliance, and (5) damage." *Moreno v. UtiliQuest, LLC*, 29 F.4th 567 (9th Cir. 2022) (citing *Lazar v. Super. Ct.*, 12 Cal. 4th 631, 638 (1996)). Intentional misrepresentation claims are subject to Rule 9(b)'s heightened pleading standards. *See Swartz*, 476 F.3d at 761–65; *Gilbert v. Amazon.com Sales, Inc.*, No. 3:25-cv-02312-BTM-SBC, 2026 WL 2124210, at *3 (S.D. Cal. July 22, 2026); *Schaefer v. Robbins & Keehn, LLP*, No. 3:06-cv-00821-JLS-BLM, 2006 WL 8427173, at *4 (S.D. Cal. Aug. 29, 2006).

The City's brief in opposition to the motion to dismiss identifies two categories of intentional misrepresentation: (1) Ms. Villanueva's July 3, 2025 statement that she did not recognize Eagle Star, and (2) statements made by Ms. Villanueva regarding RiverStone Claims' ongoing search for the Eagle Star Policy despite her alleged awareness that RiverStone UK was the proper claims administrator. *See* ECF No. 20 at 10 ("RiverStone

Claims made at least two blatant and implausible misrepresentations to the City. First, designated claims analyst Iris Villanueva denied that she even recognized Eagle Star. Second, Villanueva informed the City that she needed to continue to investigate the Eagle Star Policy, shockingly, for a period of *seven months* after the City provided that very Policy to Villanueva.").

The Court begins with Ms. Villanueva's July 3, 2025 statement. On July 3, 2025, in response to an email from the City's counsel asking Ms. Villanueva to "confirm whether Riverstone is also the tendered carrier for Eagle Star," Ms. Villanueva responded as follows:

> I cannot confirm that at this time as we have not found any policies. We have several affiliates, and there are some that I recognize as Riverstone's responsibility, however, I **do not recognize Eagle Star.** I will be able to provide you with a confirmation once the search is complete.

ECF No. 10-1, PageID.464 (emphasis added). The Court finds that the intentional misrepresentation claim based on this statement fails for several independent reasons.

First, despite the City's attempt to reframe the FAC in briefing, nowhere does the FAC allege that this statement was false. This statement appears a single time in the FAC, in the second of seven subparagraphs cataloguing statements made by Ms. Villanueva that allegedly composed "the factual basis for the [City's] allegations concerning [RiverStone Claims'] knowledge." ECF No. 10 ¶ 103. The City's opposition brief does not identify any specific allegation in the FAC that this statement was a misrepresentation.

Second, the FAC does not allege with particularity (or even allege plausibly) that Ms. Villanueva knew her statement that she "d[id] not recognize Eagle Star" was false. The FAC alleges in a conclusory and speculative manner that Ms. Villanueva "knew or became aware of facts concerning the corporate separation between [RiverStone Claims] and [RiverStone UK] and the allocation of responsibility for administration of coverage claims under the Eagle Star Policy." *Id.* ¶ 101. But the FAC is devoid of any specific allegations of Ms. Villanueva's knowledge of Eagle Star, nor does the FAC explain why

Ms. Villanueva's awareness of the existence of RiverStone UK would support an inference that she must have recognized Eagle Star.

Third, the FAC does not contain any particularized allegations regarding Ms. Villanueva's intent to mislead the City by making the challenged statement. The City's brief argues that its allegation that "[City] is informed and believes that [RiverStone Claims] made these representations, omissions, misleading disclosures, and concealment with the intent, or reckless disregard of the probability, that [City] would rely upon [RiverStone Claims'] handling of the matter and continue directing tender communications, policy materials, and follow-up efforts through [RiverStone Claims] rather than earlier directing such efforts to [RiverStone UK], thereby delaying [City's] ability to pursue and obtain a substantive coverage determination," is all that is required under Rule 9(b)'s pleading standards. *See* ECF No. 20 at 18; ECF No. 10 ¶ 106. That is incorrect. Such conclusory allegations do not satisfy Rule 9(b)'s heightened pleading standards.

The Court next addresses the City's second category of intentional misrepresentations—Ms. Villanueva's statements concerning RiverStone Claims' search for the Eagle Star Policy between May 2025 and February 2026. The FAC does not identify which statements the City is challenging as false. In its opposition brief, the City identified three supposed misrepresentations by Ms. Villanueva: (1) her August 19, 2025 statement that, after receiving a copy of the Eagle Star Policy from the City, RiverStone Claims was "conducting additional policy searches with the information you have provided," *see* ECF No. 20 at 13 (citing ECF No. 10 ¶ 103(d)); (2) her December 8, 2025 statement that she would follow up with RiverStone's "policy search team" and needed to do "a deeper dive on the policy documentation you provided us for Eagle Star and Mutual Fire," *id.* at 13–14 (citing ECF No. 10 ¶ 103(e)); and (3) her February 6, 2026 statement that RiverStone Claims was "still investigating" the Policy and was "actively investigating the supplemental information you provided in regard to Eagle Star," *id.* at 14 (citing ECF No.

10 ¶ 103(f)). But this theory of intentional misrepresentation suffers the same defects as the City's first theory.

First, nowhere does the FAC allege that Ms. Villanueva's statements concerning RiverStone Claims' policy search were actually false. The City does not allege any specific facts showing that RiverStone Claims was not conducting a policy search or knew that RiverStone UK was the proper claims administrator at the time the statements were made. Indeed, the FAC pleads that the City does not know "when [RiverStone Claims] and Iris Villanueva learned or determined that [RiverStone UK] solely administers coverage claims under the Eagle Star Policy; who made or communicated that determination; what information was provided to Ms. Villanueva concerning that determination; when and from whom Ms. Villanueva received such information; and how responsibility for administering coverage claims under the Eagle Star Policy was allocated among the RiverStone entities." *Id.* ¶ 102.

Second, the FAC does not adequately allege that Ms. Villanueva knew of the purported falsity of her statements. The FAC does not allege that Ms. Villanueva knew that RiverStone Claims was not searching for the Eagle Star Policy, nor does it allege with particularity any fact that would support such an inference.

Third, as discussed above, the FAC does not adequately allege that Ms. Villanueva intended to deceive the City.

**B. Negligent Misrepresentation**

"Under California law, a plaintiff bringing a cause of action for negligent misrepresentation must show that the defendant misrepresented a material fact 'without reasonable ground for believing it to be true' and with intent to induce the plaintiff's reliance," and "must also show such reliance was justifiable and resulted in damage." *Healthcare Ally Mgmt. of Cal., LLC v. WSP USA, Inc.*, 186 F.4th 694, 712 (9th Cir. 2026) (quoting *Home Budget Loans, Inc. v. Jacoby & Meyers L. Offs.*, 207 Cal. App. 3d 1277, 1285 (Ct. App. 1989); *see also Glenn K. Jackson Inc. v. Roe*, 273 F.3d 1192, 1200 n.2 (9th Cir. 2001) ("The elements of negligent misrepresentation include: (1) misrepresentation of

a past or existing material fact, (2) without reasonable ground for believing it to be true, (3) with intent to induce another's reliance on the misrepresentation, (4) ignorance of the truth and justifiable reliance on the misrepresentation by the party to whom it was directed, and (5) resulting damage.").

The City's negligent misrepresentation claim (Claim Six) is based on the same two categories of statements that were challenged in Claim Seven.[4] The City alleges that Ms. Villanueva's communications "created the misleading impression that it was handling the [City's] tender under the Eagle Star Policy and did not correct that impression until February 25, 2026, when Ms. Villanueva advised the [City] that 'RiverStone International will be handling the claim un[d]er the Eagle Star policy.'" *Id.* ¶ 82 (citation modified). The City alleges that RiverStone Claims "knew or should have known the scope of its own authority to administer claims for coverage under the Eagle Star Policy, the nature of its relationship with [RiverStone UK], and which RiverStone entity was responsible for administering claims for coverage under the Eagle Star Policy," and "failed to correct the misleading impression it had created in [City]," causing the City to incur costs and suffer delays in the adjudication of its claims. *Id.* ¶ 90.

The City does not dispute that Rule 9(b)'s heightened pleading standards apply to its negligent misrepresentation claim against RiverStone Claims.[5] ECF No. 20 at 15. The Court finds, for substantially the same reasons already discussed, that the City's complaint fails to allege with particularity the elements necessary to establish a negligent

---

[4] The City also attempts to refashion the FAC as bringing a claim for nondisclosure. The City's nondisclosure theory of liability is largely incoherent and fails for the same reasons discussed herein.

[5] District courts have split over whether Rule 9(b) *always* applies to California negligent misrepresentation cases. *See Chevron Prods. Co. v. Advanced Corrosion Techs & Training, LLC*, No. 20-cv-09095-CRB, 2021 WL 2156467, at *3 (N.D. Cal. May 27, 2021) (collecting cases); *Rolled Alloys, Inc. v. Walls*, No. 20-cv-01961-AJB-KSC, 2021 WL 4034201, at *5 & n.9 (S.D. Cal. Sept. 3, 2021) (collecting cases). The Court need not resolve that issue because the City's negligent misrepresentation claim here sounds in fraud.

misrepresentation claim, including misrepresentation of a material fact, lack of a reasonable ground for believing a misrepresented fact, or intent to induce reliance. The FAC's allegations fall far short of Rule 9(b)'s pledging standards.

### C. Leave to Amend

The Court grants the City ***fourteen (14) days*** from the date of this order to amend these claims against RiverStone Claims. *See United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011) ("The standard for granting leave to amend is generous. . . . Leave to amend is warranted if the deficiencies can be cured with additional allegations that are consistent with the challenged pleading and that do not contradict the allegations in the original complaint." (internal quotation marks and citations omitted)). Failure to timely amend will result in the dismissal of RiverStone Claims from the case.

## IV. CONCLUSION

For the foregoing reasons, Defendant RiverStone Claims' motion to dismiss Claims Six and Seven of the FAC is **GRANTED**. Claims Six and Seven are **DISMISSED** with leave to amend.

**IT IS SO ORDERED.**

Dated: November 6, 2026

Robert S. Huie

Hon. Robert S. Huie
United States District Judge